IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

_____
                                             )
JACOB E. ABILT,                              )
                                             )
                   Plaintiff,                )
                                             )
        v.                                   )        Case No. 1:14-cv-01031-GBL-IDD
                                             )
CENTRAL INTELLIGENCE AGENCY,                 )
*et al.,*                                    )
                                             )
                   Defendants.               )
_____)

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

The Fourth Circuit has "long recognized that when the very subject matter of the litigation is itself a state secret, which provides no way that [the] case could be tried without compromising sensitive [state] secrets, a district court may properly dismiss the plaintiff's case." *Sterling v. Tenet*, 416 F.3d 338, 347-48 (4th Cir. 2005) (internal quotation marks omitted). This employment discrimination suit brought by a former covert employee of the Central Intelligence Agency ("CIA" or "Agency") is one of those exceptional circumstances in which dismissal is required to protect state secrets.

Plaintiff alleges that the CIA discriminated against him on the basis of a disability (narcolepsy) and his race (African American), subjected him to a hostile work environment, and retaliated against him for complaining of discrimination. Plaintiff claims, *inter alia*, that his CIA supervisors falsely reported that he was failing to satisfactorily perform his clandestine work assignments and eventually terminated him based on discriminatory motives. Because of the covert nature of their work, many details regarding the CIA's employment of Plaintiff, his

supervisors, and his coworkers are national security information that are both properly classified pursuant to Executive Order 13,526, 75 Fed. Reg. 707 (2009), and subject to protections in litigation pursuant to the state secrets privilege and applicable statutory protections.  This classified information includes their specific job titles and descriptions, work assignments, performance appraisals, and other information that goes to the core of Plaintiff's claims and CIA's defenses.

Based upon his actual personal consideration of the facts at issue in this case, John O. Brennan, the Director of the CIA ("Director"), has determined that disclosure of such information could reasonably be expected to cause serious, and in some cases exceptionally grave, harm to national security and has formally asserted the state secrets privilege to protect this information. *See* Decl. and Formal Claim of State Secrets Privilege and Statutory Privileges by John O. Brennan, Dir. of the CIA ("Brennan Decl.") (attached as Ex. A).  The Director's unclassified declaration is supported in further detail by his *in camera, ex parte* classified declaration.[1] Pursuant to the Department of Justice's policy, Attorney General Eric H. Holder, Jr. has also reviewed and approved the defense of the Director's assertion of the state secrets privilege.  Such review provides an additional layer of review to ensure a considered assertion of the privilege. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1080 (9th Cir. 2010) (*en banc*).

The state secrets privilege is an absolute evidentiary privilege that excludes evidence the disclosure of which would be expected to cause serious harm to the national security.  *See El-Masri v. United States*, 479 F.3d 296, 306 (4th Cir. 2007).  While a valid claim of privilege does

---

[1]  The Classified Declaration of John O. Brennan, Director of the Central Intelligence Agency ("Classified Brennan Decl."), is submitted to the Court on an *in camera, ex parte* basis.  The Classified Brennan Declaration has been lodged with the Court Security Officers of the Department of Justice ("DOJ"), Litigation Security Group.  It is currently stored in an approved storage facility at the DOJ and will be made available for the Court's review upon request.

not automatically require dismissal of the case, where "the very question on which a case turns is itself a state secret, or the circumstances make clear that sensitive [state] secrets will be so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of privileged matters, dismissal is the proper remedy."  *Sterling*, 416 F.3d at 348 (internal quotation marks omitted).

Because the privileged information here is at the core of Plaintiff's claims, the litigation cannot proceed without these privileged state secrets, either in the presentation of Plaintiff's case or Defendants' defense to Plaintiff's allegations.  Moreover, even if the claims or defenses might theoretically be established without relying on privileged state secrets information, any litigation presents a substantial risk that privileged state secrets information would be disclosed.  As a result, dismissal is required.

In short, this is a paradigmatic example of a case where the presence of state secrets requires dismissal.  Indeed, this Court has dismissed similar employment discrimination actions filed by other covert CIA officers based on the state secrets privilege.  *See id.* (affirming *Sterling v. Tenet*, No. 03-cv-329 (E.D. Va. Mar. 3, 2004)); *Tilden v. Tenet*, 140 F. Supp. 2d 623 (E.D. Va. 2000).  Defendants respectfully submit that the Fourth Circuit's aforementioned decision in *Sterling v. Tenet* controls this case and mandates dismissal.  Accordingly, Defendants request that the Court uphold the Director's assertion of the state secrets privilege and dismiss the Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who has filed this action under the pseudonym Jacob E. Abilt, was a covert employee of the CIA's National Clandestine Service[2] from May 2008 until he was terminated in October 2011.  Brennan Decl. ¶ 6; Pl.'s Mem. in Supp. of Mot. for Leave to Use Pseudonym (Dkt. No. 2, "Pl.'s Mot. to Use Pseudonym") at 3-4.  Many of the most basic facts regarding Mr. Abilt's employment with the CIA are classified.  Brennan Decl. ¶ 7; *see also* Pl.'s Mot. to Use Pseudonym at 4 ("[T]he instant matter . . . involves parties . . . whose work for the CIA is classified . . . .").  For example, the specific National Clandestine Service operations on which Plaintiff worked are classified.  Brennan Decl. ¶ 7.  The nature and descriptions of the work that Plaintiff and his coworkers performed are classified.  *Id.*  For the majority of his former supervisors and coworkers, even the fact of their association with the CIA is classified.  *Id.*[3]  The locations and nature of some covert facilities in which Plaintiff and his coworkers worked are also unacknowledged by the CIA.  *Id.*

In 2011, Plaintiff filed a formal administrative complaint with the CIA alleging that, while he was performing this covert work, his supervisors at the CIA discriminated against him on the basis of a disability (narcolepsy) and his race (African American), subjected him to a hostile work environment, and retaliated against him for complaining of discrimination.  Compl. (Dkt. No. 1) ¶ 31.  In 2013, the CIA issued a final agency decision rejecting Plaintiff's claims as unsupported, which Plaintiff then appealed to the Equal Employment Opportunity Commission

---

[2]  The National Clandestine Service is the organization within the CIA responsible for conducting CIA's foreign intelligence and counterintelligence activities.  Brennan Decl. ¶ 10 n.3.

[3]  The mere fact of Plaintiff's former association with the CIA is no longer classified.  *See* Decl. of Martha M. Lutz, Chief of the CIA Litig. Supp. Unit at 4 n.1 (attached as Ex. B to the Defs.' Consent Mot. to Stay, Dkt. No. 20, filed Aug. 25, 2014).

("EEOC").  *See id.* ¶ 11.  The EEOC affirmed the CIA's decision and denied Plaintiff's request

for reconsideration.  *See id.* ¶ 12.

Plaintiff then brought this action alleging discrimination, hostile work environment, and

retaliation under the Rehabilitation Act, 29 U.S.C. § 791; the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e; and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  Compl. ¶ 1.  In his Complaint,

Plaintiff offered a litany of complaints about how he was treated by CIA management, actions

that he claimed were motivated by discrimination and retaliation, not legitimate concerns about

his performance.  *Id.* ¶¶ 47, 69.  He claimed, for example, that he had been offered the ability to

take naps as an accommodation for his alleged narcolepsy, but that management began

"pressuring" him about taking such naps and asking him to avoid falling asleep while at work.

*See id.* ¶ 22; *see also id.* ¶¶ 19, 27, 47.  He claimed that management submitted him to a Fitness

for Duty examination for discriminatory reasons, not because of legitimate concerns about his

ability to perform his duties.  *Id.* ¶¶ 30, 47.  Likewise, he accused his supervisors of

discriminatorily requiring him to submit weekly progress reports describing his work and to

attend weekly meetings with them where his work was discussed.  *Id.* ¶¶ 23, 32.  According to

Plaintiff, his supervisors also falsely accused him of performing below standards, solicited false

complaints about him from his coworkers, and gave him an undeservedly negative performance

evaluation.  *Id.* ¶ 47.  Finally, Plaintiff claims that CIA management convened a Personnel

Evaluation Board to consider terminating him, denied him access to computer accounts

containing information he might have used to defend himself before the Board, and then

terminated him – all allegedly the result of discrimination and retaliation.  *Id.* ¶¶ 34-36, 47.

On August 25, 2014, Defendants filed a consent motion requesting that the Court vacate

its scheduling order and stay all proceedings in the case for sixty days so that Defendants could

determine what steps would be necessary to protect the classified information implicated by Plaintiff's Complaint.  *See* Dkt. No. 20.  The Court granted Defendants' motion on September 2, 2014, staying proceedings until October 21, 2014.  Dkt. No. 23.  Because Defendants' consultations regarding the steps needed to protect the information at issue were still ongoing in late October, Defendants filed another consent stay motion on October 17, 2014, Dkt. No. 24, and the Court subsequently stayed proceedings until December 5, 2014.  Dkt. No. 27.  Those consultations have now concluded:  Director Brennan has formally asserted the state secrets privilege and statutory privileges over information in this case, and Attorney General Holder has reviewed and approved DOJ's defense of the Director's assertion of these privileges.

## ARGUMENT

The existence of a privilege for military and state secrets to protect information vital to the national security or diplomatic relations "is well established in the law of evidence."  *United States v. Reynolds*, 345 U.S. 1, 6-7 (1953).  Although the privilege was developed in common law, the state secrets privilege has a constitutional foundation based on the President's Article II powers to conduct foreign affairs and provide for the national defense.  *See United States v. Nixon*, 418 U.S. 683, 710 (1974); *El-Masri*, 479 F.3d at 303-04.[4]  The state secrets privilege is an absolute privilege and "even the most compelling necessity cannot overcome the claim of [the state secrets] privilege."  *Reynolds*, 345 U.S. at 11; *Sterling*, 416 F.3d at 343.  "[N]o attempt is

---

[4]  *See also Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) ("The authority to protect such information falls on the President as head of the Executive Branch and as Commander in Chief."); *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) (state secrets privilege prevents the "impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments"); *United States v. Marchetti*, 466 F.2d 1309, 1315 (4th Cir. 1972)  ("Gathering intelligence information and other activities of the Agency, including clandestine affairs against other nations, are all within the President's constitutional responsibility for the security of the Nation as the Chief Executive and as Commander in Chief of our Armed Forces.").

made to balance the need for secrecy of the privileged information against a party's need for the information's disclosure; a court's determination that a piece of evidence is a privileged state secret removes it from the proceedings entirely." *El-Masri*, 479 F.3d at 306.

Analyzing a state secrets privilege claim under this standard involves three steps. *Id.* at 304. First, the Court must ascertain that the procedural requirements for invoking the privilege have been satisfied. *Id.* Second, the Court must determine whether the information is properly privileged. *Id.* Finally, the Court must determine whether the case can proceed without risking the disclosure of the protected information. *Id.*

As explained below, Defendants have met the procedural requirements for invoking the privilege, and the information is properly protected. Moreover, this action should be dismissed because privileged information would be required in the presentation of Plaintiff's case or Defendants' defense thereto, or, more generally, because the case is so infused with privileged information that further proceedings would impose an undue risk of disclosing privileged information.

## I.      Defendants Have Complied with the Procedural Requirements for the Assertion of the State Secrets Privilege.

To ensure that the privilege is asserted only when necessary, the United States must satisfy three procedural requirements to invoke the state secrets privilege: (1) there must be a "formal claim of privilege;" (2) the claim must be "lodged by the head of the department which has control over the matter;" and (3) the claim be made "after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7-8; *El-Masri*, 479 F.3d at 304.

Defendants have satisfied these procedural requirements. First, the state secrets privilege has been formally asserted by the Director of the CIA. *See* Brennan Decl. ¶ 8. Second, the Director of the CIA is the head of the CIA, which has control over the records and information

implicated by this case. *Id.* ¶ 1; 50 U.S.C. § 3036(c)(1) ("The Director of the Central Intelligence Agency shall serve as the head of the Central Intelligence Agency."). Third, as explained in his declaration, the Director has personally considered the matter and has determined that disclosure of the information at issue reasonably could be expected to cause serious, and in some cases exceptionally grave, harm to national security. *See generally* Brennan Decl. The Director's classified declaration describes in detail the information subject to the claim of privilege, and explains how disclosure of the information at issue reasonably could be expected to result in damage to the national security of the United States. *See supra* n.1.

In addition, the Attorney General also has reviewed and approved defense of the assertion of the state secrets privilege pursuant to procedures established by the DOJ. *See Mem. from the Att'y General* at 1 (Sept. 23, 2009) (attached as Ex. B to the Defs.' Consent Mot. to Stay, Dkt. No. 20, filed Aug. 25, 2014).[5]  Accordingly, the Government has not only satisfied the procedural requirements for the assertion of the state secrets privilege; it also has taken additional steps to ensure a considered assertion of the privilege. *See Jeppesen*, 614 F.3d at 1080.

---

[5]  Under these procedures, DOJ "will not defend an assertion of the privilege . . . without the personal approval of the Attorney General (or, in the absence or recusal of the Attorney General, the Deputy Attorney General or the Acting Attorney General)." *Mem. from the Att'y General* ¶ 4(A). Once the head of a department personally determines that the state secrets privilege applies, that agency must request that DOJ present the claim in the litigation. *See id.* ¶ 2(A). A DOJ Assistant Attorney General then must make a formal written recommendation as to "whether or not [DOJ] should defend the assertion of the privilege in litigation." That recommendation is made to DOJ's "State Secrets Review Committee," *id.* ¶ 2(B), comprised of senior DOJ officials. The Committee then makes a recommendation to the Associate Attorney General, who, through the Deputy Attorney General, makes a final recommendation to the Attorney General. *Id.* ¶ 3 & n. 2.

II.     **The Information Described in the Director's Declarations Is Protected by the State Secrets Privilege and Statutory Privileges.**

After the state secrets privilege has been properly invoked, the Court "must determine whether the information that the United States seeks to shield is a state secret, and thus privileged from disclosure." *El-Masri*, 479 F.3d at 304.  The privilege must be sustained if the Court is satisfied, "from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10.  "After information has been determined to be privileged under the state secrets doctrine, it is absolutely protected from disclosure . . . ." *El-Masri*, 479 F.3d at 304.  "[E]ven the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that [state] secrets are at stake." *Reynolds*, 345 U.S. at 11.

The state secrets doctrine does not represent "a surrender of judicial control over access to the courts." *El-Masri*, 479 F.3d at 312.  But  "[i]n assessing the risk that . . .  a disclosure [of the information over which the United States claims privilege] might pose to national security, a court is obliged to accord the utmost deference." *Id*. at 305 (internal citation omitted).  As the Supreme Court has stressed, "what may seem trivial to the uninformed, may [be] of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *CIA v. Sims*, 471 U.S. 159, 178 (1985) (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978)).  *Accord Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980) ("[E]ach individual piece of intelligence information, much like [a] piece of a jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself.").  "Frequently, the explanation of the department head who has lodged the formal privilege claim, provided in an affidavit or personal declaration, is

sufficient to carry the Executive's burden" of satisfying the court that the information is privileged.  *El-Masri*, 479 F.3d at 305.

Here, the Director has provided two such declarations – both a public declaration making a formal claim of privilege and explaining the serious, and in some cases exceptionally grave, harm that the disclosure of information at issue in this litigation could be expected to cause to national security, and a classified declaration describing this information and the harm its disclosure could cause in greater detail than is possible on the public record.  *See generally* Brennan Decl.; *supra* n.1.[6]  Full descriptions of the information at issue, the Director's reasoning, and the dangers posed by the release of such information cannot be presented in this Memorandum, as doing so would necessarily reveal the very privileged information that the Director seeks to protect.  Brennan Decl. ¶ 5.  As described in general and unclassified terms, however, the Director's claim of the state secrets privilege in this case extends to two basic categories of information: (a) information concerning specific CIA programs or activities on which Plaintiff worked, and (b) information concerning CIA's employment of Plaintiff, his coworkers, and his supervisors.  *Id*. ¶ 9.

Among other things, the disclosure of such information could reasonably be expected to frustrate intelligence operations, deprive the CIA of valuable intelligence-gathering methods, deprive the CIA of the use of clandestine personnel and facilities it needs to conduct its operations, and potentially even place the lives of CIA personnel in danger.  *See, e.g., id*. ¶¶ 15-16, 19-22.  By interfering with the CIA's ability to protect the United States against threats, such disclosure could thus reasonably be expected to cause serious, and in some cases exceptionally

---

[6] While *in camera, ex parte* classified submissions are not required for assertion of the privilege, *see Reynolds,* 345 U.S. at 8, the United States has typically provided such submissions in order to assist a court in ascertaining whether the circumstances for the privilege assertion are appropriate. *See, e.g., El-Masri*, 479 F.3d at 301; *Sterling*, 416 F.3d at 342.

grave, harm to national security.  *See id.*  The Director's assertion of the privilege with respect to these categories of information, accordingly, should be upheld.

Considering each category of information at issue individually, the state secrets privilege properly protects information concerning the specific CIA programs or activities on which Plaintiff worked.  *Sterling*, 416 F.3d at 346 ("We hardly need defend the proposition that CIA personnel, activities, and objectives must be protected from prying eyes.").  As the Director explained, disclosure of information regarding the programs and activities on which Plaintiff worked could reasonably be expected to cause serious harm to national security because such information would reveal the focus of intelligence activities and the covert methods used to gather intelligence.  Brennan Decl. ¶¶ 14-15.  Disclosure of such information could alert foreign intelligence agencies or terrorist organizations to a focus of CIA intelligence activities and enable them to undertake countermeasures to hinder CIA's ability to gather intelligence, frustrating CIA intelligence-gathering operations and limiting the means the CIA has at its disposal to gather intelligence.  *Id.* ¶ 15.

Congress also has recognized the need to protect such information from disclosure. Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1), provides that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure."  In accordance with guidance from the Director of National Intelligence and consistent with Section 1.6(d) of Executive Order 12333, the CIA in turn is required to protect intelligence sources and methods from unauthorized disclosure pursuant to Section 102A.  Brennan Decl. ¶¶ 10-11; *see also* 50 U.S.C. § 3036(d)(4) (requiring the Director of the CIA to "perform such other functions and duties related to intelligence affecting the national security as the President or the Director of National Intelligence may

direct.").  Therefore, the information is not only protected by the state secrets privilege, but also protected from disclosure by statute.

The state secrets privilege also properly protects information concerning the CIA employment of Plaintiff and his coworkers.  This includes information that might reveal (1) the identities of CIA officers and employees; (2) the job titles, duties, work assignments of Plaintiff and other covert employees, and the criteria and reasons for making the work assignments and employment decisions regarding them; (3) sources and methods used by covert employees, including operational tradecraft and the identity of human assets; (4) the targets and focus of CIA's intelligence collection and operations, and (5) the location of CIA covert facilities. Brennan Decl. ¶¶ 9, 16.

For example, disclosure of the identities of current covert employees would compromise the ability of such employees to continue to serve in a clandestine role, at the very least requiring the CIA to find, vet, and train new employees to fill such roles.  Brennan Decl. ¶ 17.  In addition, disclosure of the identities of covert employees of the CIA could jeopardize their lives and the lives of their family members as well as persons who may have had contact with them.  *Id.* Indeed, Congress has recognized the CIA's unique need to protect from public disclosure the names of its employees:  Section 6 of the Central Intelligence Act of 1949, as amended, provides that the CIA shall be exempt from the provisions of any laws which require publication or disclosure of "the organization, function, *names*, official titles, salaries, or numbers of personnel employed by the [CIA]."  50 U.S.C. § 3507 (emphasis added).  Based on this provision, courts have held that the identities of CIA employees should be protected from disclosure.  *See, e.g., Minier v. CIA*, 88 F.3d 796, 801 (9th Cir. 1996) (recognizing "Congress's express acknowledgment that the CIA may withhold agent names" and holding that "there can be no

12

doubt" that the CIA may refuse to confirm or deny the existence of an employment relationship in response to a Freedom of Information Act request); *Frugone v. CIA*, 169 F.3d 772, 774-75 (D.C. Cir. 1999) (affirming ruling recognizing CIA's statutory authority to withhold the identities of its covert employees).

Similarly, information relating to the job titles, duties, and work assignments of Plaintiff and other covert employees – and the criteria and reasons for making the work assignments and employment decisions regarding them – is also properly protected from disclosure by the state secrets privilege. *See* Brennan Decl. ¶¶ 19-21. As the Fourth Circuit recognized in *Sterling*, the responsibilities of covert CIA employees inherently "involve[] state secrets." *See* 416 F.3d at 347-48. Among other concerns, information regarding the duties and work assignments of Plaintiff and other covert employees would reveal the methods (commonly known as "tradecraft") used by covert CIA officers to gather and analyze intelligence information, the targets and focus of CIA intelligence collection and operations, and, in some cases, even possibly sources, if any, used by a covert employee. Brennan Decl. ¶¶ 19-21. As discussed above, the exposure of CIA methods and targets gives those targets the ability to frustrate CIA's intelligence-gathering methods and thus diminishes the CIA's effectiveness. As such, courts have repeatedly recognized that these are exactly the types of information that the state secrets privilege protects. *See, e.g., Sterling*, 416 F.3d at 346 ("information that would result in . . .'disclosure of intelligence-gathering methods or capabilities' . . . falls squarely within the definition of state secrets") (quoting *Molerio v. FBI*, 749 F.2d 815, 820-21 (D.C. Cir. 1984)); *Jeppesen*, 614 F.3d at 1086 (holding that "information concerning CIA clandestine intelligence operations that would tend to reveal intelligence activities, sources or methods" is protected by state secrets privilege); *Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1204 (9th Cir.

13

2007) (applying the privilege to "the means, sources and methods of intelligence gathering").  *See also Sims*, 471 U.S. at 175-76 ("The continued availability of [intelligence] sources depends on CIA's ability to guarantee the security of information that might compromise them and even endanger [their] personal safety.") (quoting *Snepp v. United States*, 444 U.S. 507, 512 (1980) (*per curiam*)).

Finally, information regarding the location of CIA covert facilities is also protected by the state secrets privilege.  Public disclosure that the CIA has a covert facility in any given location could lead hostile foreign intelligence services or terrorists to identify personnel working at the facility.  Brennan Decl. ¶ 22.  It also could increase the likelihood of a terrorist attack at that location.  *Id*.  In addition, with respect to locations overseas, official acknowledgment that the CIA maintains a covert field installation could cause the host government to publicly distance itself from the United States Government or take other measures to reduce the effectiveness of a CIA office.  *Id.*  Based on such concerns, courts have recognized that need to protect the location of covert CIA facilities.  *See Blazy v. Tenet*, 979 F. Supp. 10, 23-24 (D.D.C. 1997) (CIA properly withheld the location of covert facilities in a FOIA case); *Earth Pledge Found. v. CIA,* 988 F. Supp. 623, 627-28 (S.D.N.Y. 1996), *aff'd per curiam*, 128 F.3d 788 (2d Cir. 1997) (CIA properly refused to confirm or deny the existence of a station in the Dominican Republic).

Therefore, based on the Director's classified and unclassified declarations, the Government has fully and sufficiently demonstrated the basis for the privilege assertion in this case, and the Court thus should exclude the privileged information from further proceedings in this case.

**III.    Because Privileged Information Is Essential to Litigation of Plaintiff's Claims, Those Claims Must Be Dismissed.**

When a court sustains a claim of privilege, it must then resolve "how the matter should proceed in light of the successful privilege claim." *El-Masri*, 479 F.3d at 304.  "[A] court's determination that a piece of evidence is a privileged state secret removes it from the proceedings entirely."  *Id.* at 306.  When possible, the privileged information "'must be disentangled from nonsensitive information to allow for the release of the latter.'"  *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983).  But "when, as a practical matter, secret and nonsecret information cannot be separated," the court must restrict a party's access "not only to evidence which itself risks the disclosure of a state secret, but also those pieces of evidence or areas of questioning which press so closely upon highly sensitive material that they create a high risk of inadvertent or indirect disclosures." *Jeppesen*, 614 F.3d at 1082.

While some cases may "proceed accordingly, with no consequences save those resulting from the loss of evidence,'" *Al-Haramain*, 507 F.3d at 1204 (quoting *Ellsberg*, 709 F.2d at 64), courts have found that dismissal is necessary where the resolution of the case may implicate the privileged information for one of three reasons.  *See Jeppesen*, 614 F.3d at 1083; *Trulock v. Lee*, 66 F. App'x 472, 476 (4th Cir. 2003); *Sterling*, 416 F.3d at 348; *El-Masri*, 479 F.3d at 308-10. First, if the *plaintiff* cannot prove the elements of his claim with non-privileged evidence, then the court may dismiss his claim as it would with any plaintiff who cannot prove his case.  *See Sterling*, 416 F.3d at 346; *El-Masri*, 479 F.3d at 309; *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).  Second, "if the privilege deprives the *defendant* of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary judgment to the defendant." *Kasza v. Browner*, 133 F.3d at 1166. (emphasis in original); *see also Sterling*, 416 F.3d at 347; *El-Masri*, 479 F.3d at 309.  Third, even if the claims and defenses

15

might theoretically be established without relying on privileged evidence, it may be impossible to

proceed with the litigation because litigating the case to a judgment on the merits would present

an unacceptable risk of disclosing state secrets given the inseparability of privileged and non-

privileged information. *See Sterling*, 416 F.3d at 347-48; *El-Masri*, 479 F.3d at 309-10;

*Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1243 (4th Cir. 1985); *see also Jeppesen*, 614

F.3d at 1083.[7]

   All three reasons apply here, compelling dismissal of the case.  Privileged information

would be required not only for Plaintiff to establish his case, but Defendants "could not properly

defend themselves" without such information. *El-Masri*, 479 F.3d at 308.  Moreover, because

"the nature of the question presented in this action and the proof required by the parties to establish

or refute the claim, the very subject" of the case requires dismissal because litigation of the merits

of the claims would present an unjustifiable risk of revealing state secrets. *See Fitzgerald*, 776

F.2d at 1243; *see also El-Masri*, 479 F.3d at 308 ("a proceeding in which the state secrets

privilege is successfully interposed must be dismissed if the circumstances make clear that

privileged information will be so central to the litigation that any attempt to proceed will threaten

that information's disclosure") (citing *Sterling*, 416 F.3d at 348); *see also Jeppesen*, 614 F.3d at

1088 (requiring dismissal where the facts underlying the claims and defenses are "infused with

---

[7]  In addition to these and similar cases, which derive from the Supreme Court's opinion in
*United States v. Reynolds*, 345 U.S. 1 (1953), holding that the state secrets privilege itself may
operate to require dismissal of cases where state secrets are inherently at issue, courts also have
recognized that a case may be dismissed pursuant to *Totten v. United States*, 92 U.S. 105 (1875),
which, separate from the state secrets privilege doctrine, establishes a "categorical bar" in a
"distinct class of cases that depend upon clandestine spy relationships." *See Tenet v. Doe*, 544
U.S. 1, 10 (2005).  In addition to being subject to dismissal under *Reynolds* and Fourth Circuit
authority governing the state secrets privilege, this case also falls within this *Totten* bar because
Plaintiff's claims all necessarily depend on facts regarding his clandestine work assignments and
performance.  Because this case should be dismissed under *Reynolds* and its progeny, as further
discussed in this Memorandum, however, the Court need not reach the question of whether this
case also must be dismissed under the *Totten* doctrine.

state secrets"). Based on these concerns, this Court has at least twice dismissed similar Title VII actions filed by other covert CIA employees based on the state secrets privilege. *See Sterling*, 416 F.3d at 346-48; *Tilden*, 140 F. Supp. 2d at 627-28. *See also Edmonds v. U.S. Dep't of Justice*, 323 F. Supp. 2d 65, 79-82 (D.D.C. 2004), *aff'd*, 161 F. App'x 6, 2005 WL 3696301(D.C. Cir. 2005) (dismissing action by former contract translator for Federal Bureau of Investigation challenging her termination because the nature of plaintiff's work assignments and the events surrounding her termination were the subject of state secrets).[8]

## A.   Privileged Information Would Be Required for Plaintiff to Prove His Case.

Because the facts underlying Plaintiff's claims are infused with state secrets, Plaintiff cannot prove any of his claims without relying on privileged information.

Count 1 – Disability Discrimination:   Plaintiff alleges that he is disabled due to a medically diagnosed condition of narcolepsy. Compl. ¶ 43. Plaintiff claims that, although he possessed the requisite skills, knowledge, and experience to successfully perform his required

---

[8]  Applying the state secrets privilege, the Fourth Circuit and other circuits have upheld dismissals in a variety of types of cases. *See, e.g., Jeppesen*, 614 F.3d 1085-86 (dismissing allegations of foreign nationals who alleged that they had been illegally detained and tortured); *El-Masri*, 479  F.3d at 313 (dismissing claims alleging that plaintiff had been illegally detained and tortured as part of the CIA rendition program); *Tenenbaum v. Simonini*, 372 F.3d 776, 777-78 (6th Cir. 2004) (dismissing claims that federal employees had conducted criminal espionage investigation of  plaintiff solely because he was Jewish); *Kasza*, 133 F.3d at 1168-70 (dismissing action by former workers at classified Air Force facility alleging violation of a federal environmental statute); *Black v. United States*, 62 F.3d 1115, 1116-19 (8th Cir. 1995) (dismissing action alleging that Executive branch had engaged in "campaign of harassment and psychological attacks" against plaintiff); *Bareford v. Gen. Dynamics Corp*., 973 F.2d 1138,1141-42 (5th Cir. 1992) (dismissing actions alleging manufacturing and design defects in military weapons); *Zuckerbraun v. Gen. Dynamics* Corp., 935 F.2d 544 (2d Cir. 1991) (dismissing claim against defense contractors for a wrongful death); *Fitzgerald*, 776 F.2d at 1237 (dismissing libel action based on a magazine article on Navy classified marine mammal program); *Halkin v. Helms*, 690 F.2d 977, 981 (D.C. Cir. 1982) (dismissing action alleging unlawful CIA surveillance); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir. 1980) (*en banc*) (*per curiam*) (dismissing action alleging tortuous interference with classified contract to perform services for the Navy).

duties, the CIA failed to reasonably accommodate his disability.  *Id.* ¶¶ 46, 54.  Plaintiff contends

that, by criticizing him for sleeping at his desk and, thus, failing to allow him to comply with the

accommodation given to him for his narcolepsy, the Agency deprived him of the opportunity to

be as productive as his coworkers by unreasonably interfering with his efforts to perform his job

duties.  *Id.* ¶ 56.  Thus, Plaintiff claims that, as a result of not receiving a reasonable

accommodation, he was terminated from his employment with the agency on the basis of his

disability in violation of the Rehabilitation Act.  *Id.* ¶ 61.

> Plaintiff could not even make out a *prima facie* claim of disability discrimination – much

less prove his claim – without reliance on state secrets.  In order to establish a violation of the

Rehabilitation Act for disparate treatment, a plaintiff must prove: (1) that he has a disability; (2)

that he is otherwise qualified for the employment or benefit in question; and (3) that he was

excluded from the employment or benefit due to discrimination on the basis of the disability.

*Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir.1995).  Here, such a

showing would require Plaintiff to establish that he was "qualified" for his covert position, 42

U.S.C. § 12112(a), such that he "can perform the essential functions of the . . . position."  *Id.*

§ 12111(8) (incorporated into the Rehabilitation Act by 29 U.S.C. § 791(f)).  Among the factors

used to determine the essential functions of the covert position at issue in this case would be the

CIA's judgment as to which functions are essential, the work experience of past incumbents in

the job, and the current work experience of incumbents in the job.  29 C.F.R. § 1630.2(n)(3).

Such information is protected by the Director's assertion of the state secrets privilege and,

indeed, is precisely the sort of information that Congress has categorically shielded from

disclosure, in recognition of the CIA's unique need for secrecy in the interests of national

security.  *See* 50 U.S.C. § 3507 (exempting the CIA from the provisions of any other law that

require "disclosure of the . . . functions . . . of personnel employed by the Agency"); *see also Sims*, 471 U.S. at 170 (noting that Congress intended to give the CIA "broad power to protect the secrecy and integrity of the intelligence process").  Further, the performance standards for Plaintiff's position, Plaintiff's performance evaluations, and any further explanation directed at rebutting his supervisors' assessment of deficiencies in his performance are also state secrets. *See* Brennan Decl. ¶¶ 18-20.  Similarly, the identities of potential witnesses – Plaintiff's former supervisors and coworkers at the CIA – and the nature of their duties are also protected by the state secrets privilege.  *Id*.  ¶¶ 17-19.  Thus, to establish a *prima facie* case of discrimination based on his disability, Plaintiff would be required to disclose privileged information.

   <u>Count 2 – Retaliation</u>:  Plaintiff claims that the CIA retaliated against him because he had submitted a prior discrimination claim.  Compl. ¶ 70.  Plaintiff claims that the adverse employment actions to which he was subjected included being intimidated about taking naps, required to submit weekly reports and to attend weekly progress meetings with his supervisors, required to submit to a Fitness for Duty evaluation, addressed in a demeaning manner, given an "Unsuccessful" rating on his performance evaluation, and fired from his position.  *Id.* ¶¶ 34, 69.

   Litigation of Plaintiff's retaliation claim would require disclosure of privileged information.  To establish a *prima facie* case for retaliation, Plaintiff must show that he engaged in some prior protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two.  *See, e.g.*, *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir.2010).  Although the fact of Plaintiff's termination from employment is unclassified, the evidence Plaintiff would need to establish a causal connection between the adverse employment action and his protected activity would require an explanation of the essential functions of the covert position at issue in this case, the performance standards for his

position, his performance evaluations, and any further explanation directed at rebutting his supervisors' assessment of deficiencies in his performance.  This information is protected by the state secrets privilege.  Further, the identities of potential witnesses – Plaintiffs' former supervisors and coworkers at the CIA – and the nature of their duties are also privileged.  Thus, to establish a *prima facie* case of retaliation, Plaintiff would be required to disclose privileged information.

Count 3 – Discrimination on the Basis of Race: Plaintiff alleges that, as an African American, he was subjected to disparate treatment because he was subjected to different terms and conditions of employment than similarly situated coworkers.  Compl. ¶¶ 87, 89.  Plaintiff further claims he was deprived of opportunities for advancement due to his race.  *Id.* ¶ 88.

To establish a *prima facie* case of disparate treatment, Plaintiff must establish that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination, most commonly by demonstrating that he was treated differently than similarly situated colleagues.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*). Plaintiff's attempt to make this predicate showing would necessarily implicate privileged information.  For example, simply proving that he was similarly situated to coworkers to whom he tries to compare himself would require disclosure of privileged information.  The nature of and job descriptions for the covert positions occupied by Plaintiff's coworkers are privileged. *See, e.g.*, Brennan Decl. ¶ 9.  Moreover, Plaintiff also would be required to show that his coworkers are similarly situated to him with respect to experience, skills, training, and job performance.  In particular, Plaintiff's Complaint indicates that he intends to demonstrate that he performed his duties well, particularly during an overseas assignment, and that his success

undercuts his supervisors' negative assessment of his performance.  *See, e.g.*, Compl. ¶ 28.  This inquiry would likewise require disclosure of state secrets.

In addition, to establish an inference of discrimination or to demonstrate why his treatment constituted an adverse action, Plaintiff would need to show that his coworkers with similar performance issues were not placed on a performance plan or subjected to weekly progress reviews.  Such a showing would require disclosure of the details of the specific assignments given to Plaintiff and his coworkers and how those assignments were evaluated for purposes of performance evaluations and for promotions.  The details required to make a sufficient showing would necessarily implicate information regarding (1) the programs and activities for which he worked, (2) the job titles and the duties, training and experience required for different positions, and (3) the work assignments of employees.  All of this information is properly protected by the state secrets privilege, as discussed above.  And disclosure of these privileged details would, in turn, reveal other privileged information about the sources and methods used by the CIA for its intelligence activities and the targets of its intelligence collection.

For the same reasons, the Fourth Circuit upheld this Court's dismissal of a similar case against the CIA under Title VII.  *See Sterling*, 416 F.3d at 346-48.  In that case, as here, a covert CIA officer alleged that he had suffered disparate treatment based on his race.  The Fourth Circuit held that "[t]here is no way for Sterling to prove employment discrimination without exposing at least some classified details of the covert employment that gives context to his claim."  *Id.* at 346.  The court found that "[i]t would be impossible" for plaintiff "to show that he was treated worse than similarly situated non-African American agents" without requiring disclosure of "the comparative responsibilities of Sterling and other CIA agents, the nature and

goals of their duties, the operational tools provided (or denied) to them, and their comparative opportunities and performance in the field." *Id.* The Fourth Circuit also found that "[s]imilar comparative evidence" would be "necessary for Sterling to meet his further burden of establishing that he suffered an adverse employment action." *Id.* The court explained that proof that he suffered an adverse action "would require inquiry into state secrets such as the operational objectives and long-term missions of different agents, the relative job performance of these agents, details of how such performance is measured, and the organizational structure of CIA intelligence-gathering." *Id.* at 346-47. *Accord Tilden*, 140 F. Supp. 2d at 627 (dismissing Title VII case against the CIA because "there is no way in which this [case] can proceed without disclosing state secrets"). For the same reasons, Plaintiff's disparate treatment claim should be dismissed.

Count 4 – Hostile Work Environment:  Plaintiff claims that, due to his disability, race, and protected status, he was subjected to a hostile work environment because his supervisors humiliated and harassed him in a manner that unreasonably interfered with his employment. Compl. ¶¶ 99-104.

To proceed on a Title VII hostile work environment claim, Plaintiff would need to show that the offending conduct (1) was unwelcome, (2) was because of his disability, race, or protected status, (3) was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment, and (4) was imputable to his employer. *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008). Establishing the third element requires that plaintiff demonstrate that the work environment was not only subjectively hostile, but also objectively so. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Such proof would depend upon the totality of the circumstances, including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted).

To show that the actions taken against him were abusive and discriminatory, not the result of legitimate concerns regarding his performance – as he must to make out a *prima facie* case of hostile work environment – Plaintiff again would be required to explain the duties and responsibilities of his covert position, the performance standards for that position, his performance evaluations, and any further explanation directed at rebutting his supervisors' assessment of deficiencies in his performance. This is not a case in which Plaintiff's allegations of harassment stem from racial slurs or remarks that are insensitive on their face. *See* Compl. ¶¶ 32, 103. Rather, Plaintiff's hostile work environment allegations relate essentially to the same allegations that underlie his disparate treatment claims: the requirement that he submit weekly progress reports, his supervisors' provision of "false" negative feedback to Plaintiff on a weekly basis, and that Plaintiff was addressed in a "demeaning" manner by his managers in the course of criticizing him for his job lapses. *See id.* A factfinder could not determine whether such criticisms of Plaintiffs' work performance were based on legitimate problems with his performance or instead on discriminatory motivations without knowing exactly what Plaintiffs' supervisors said to him about his performance and how he was actually performing his duties. The details about Plaintiff's performance and his supervisor's comments about it are privileged, because, as discussed above, such details would necessarily reveal the nature and focus of Plaintiff's work. Likewise, the identities of potential witnesses who could comment on Plaintiff's work environment – Plaintiff's former supervisors and coworkers at the CIA – are also protected.

**B.      Defendants Could Not Properly Defend Against the Claims Without Privileged Information.**

Even if Plaintiff "were somehow able to manage the impossible feat of making out all of the elements of a Title VII claim [and disability discrimination claim] without revealing state secrets," *Sterling,* 416 F.3d at 347, the CIA would then be required to articulate a legitimate, nondiscriminatory reason for its actions regarding plaintiff.  *Id*.  In this case, all of Plaintiffs' claims center on his work performance as a covert operations officer for the CIA:  Plaintiff's supervisors at the CIA regularly criticized his performance and gave him negative performance evaluations, eventually culminating in his termination – actions that Plaintiff contends were driven by discriminatory motives, rather than actual poor performance.  *See* Compl. at ¶¶ 32, 47, 69, 84, 103.  As explained in the Director's declarations, the quality of Plaintiff's work performance could not be fully discussed or placed in proper context without disclosing privileged information.  *See, e.g.*, Brennan Decl. ¶¶ 7-9, 19.  In order to explain the basis for its decisions regarding Plaintiff's employment, the CIA would be required to disclose privileged information regarding the work assignments of both Plaintiff and his coworkers as well as details regarding their job performances and the criteria used by the CIA to evaluate their performance and to make certain assignments.  *See id*. ¶¶ 19-21.  Disclosure of such details would, in turn, reveal still other privileged information regarding the methods used by the CIA to collect intelligence information and the targets and focus of its intelligence activities.  *Id.* ¶¶ 20-21.

The circumstances here are, thus, materially indistinguishable from those in *Sterling*.  In that case, the Fourth Circuit explained, in order for the CIA to establish that it had a legitimate, non-discriminatory reason for its treatment of that plaintiff, the CIA would have to explain why it gave him the work assignments and operational tools it did.  *Sterling*, 416 F.3d at 347.  The court found that the evidence required to make such a showing "would inescapably reveal the

24

criteria inherent in sensitive CIA decisionmaking" and thus should be dismissed.  *Id.*  Quite similarly, in the instant case, even if Plaintiff could establish his claims without relying on privileged information, the action should still be dismissed because privileged information is required for Defendants to establish a defense.  *See also El-Masri*, 479 F.3d at 309 (dismissing case, in part, because the primary defenses potentially available to defendants "would require disclosure of information regarding the means and methods by which the CIA gathers intelligence.").

**3.      Litigating the Case Would Impose An Unacceptable Risk of Disclosing State Secrets.**

Even assuming that Plaintiff's claims and Defendants' defenses could be theoretically presented without relying upon privileged evidence, courts have found that dismissal is required where the non-privileged information is so entwined with privileged information that litigating the case on the merits "would present an unacceptable risk of disclosing state secrets."  *Jeppesen*, 614 F.3d at 1083; *see also El-Masri*, 479 F.3d at 308 (dismissal required where "any attempt to proceed [with litigation] will threaten" disclosure of state secrets); *Fitzgerald*, 776 F.2d at 1243 (dismissal required where "state secrets could be compromised" in the process of litigation). That is exactly the situation presented here.

First, as in *Sterling*, "the very methods by which evidence would be gathered in this case are themselves problematic" because many of the witnesses, including Plaintiff, would be current or former covert officers of the CIA.  416 F.3d at 347.  "Forcing such individuals to participate in a judicial proceeding – or even give a deposition – risks their cover" and would reveal their identities.  *Id.  Accord El-Masri*, 479 F.3d at 309-10.  And the identities of covert employees are one of the categories of information which the assertion of the state secrets privilege seeks to protect.  Brennan Decl. ¶¶ 9, 16-18.

Second, aside from disclosing the identities of covert CIA employees, any attempt by Plaintiff or other covert officers to describe their activities would inherently pose serious risks because it is "doubtful what information they could provide that would not have national security implications." *Sterling*, 416 F.3d at 347.  "Almost any relevant bit of information could be dangerous to someone, even if the agent himself was not aware that giving the answer could jeopardize others." *Id.*

Third, even if Plaintiff and other covert employees could attempt to avoid testimony involving classified information, there is a substantial danger that such information would be released inadvertently or indirectly by a process of elimination.  As the Fourth Circuit explained in *Farnsworth Cannon*, "[i]n an attempt to make out a prima facie case during an actual trial, the plaintiff and [his] lawyers would have every incentive to probe as close to the core secrets as the trial judge would permit.  Such probing in open court would inevitably be revealing."  635 F.2d at 281.  In these circumstances, "state secrets could be compromised even without direct disclosure by a witness."  *Fitzgerald*, 776 F.2d at 1243.  "For example, if a witness is questioned about facts A and B, the witness testifies that fact A is not a military secret, and the government objects to any answer regarding fact B, by implication one might assume that fact B is a military secret."  *Id*. at 1243 n.10.  *Accord Gen. Dynamics Corp. v. United States*, 131 S.Ct. 1900, 1907 (2011) ("Each assertion of the privilege can provide another clue about the Government's covert programs or capabilities.").  This danger is especially great where "the privileged and non-privileged material are inextricably linked."  *Bareford*, 973 F.2d at 1144.  As the Ninth Circuit explained,

> [a]dversarial litigation, including pretrial discovery of documents and witnesses
> and the presentation of documents and testimony at trial, is inherently complex
> and unpredictable.  Although district courts are well equipped to wall off isolated
> secrets from disclosure, the challenge is exponentially greater in exceptional cases

like this one, where the relevant secrets are difficult or impossible to isolate and even efforts to define a boundary between privileged and unprivileged evidence would risk disclosure by implication. In these rare circumstances, the risk of disclosure that further proceedings would create cannot be averted through the use of devices such as protective orders or restrictions on testimony.

*Jeppesen*, 614 F.3d at 1089.

In sum, this case presents a classic example of a situation in which the assertion of the state secrets privilege requires dismissal. Information protected by the state secrets privilege would be required by Plaintiff to establish his case and by Defendants to establish a defense. Moreover, because the claims are so infused with the privileged information, any attempt to litigate the merits of the claims poses an unacceptable risk of disclosing privileged information. While courts have acknowledged the potentially harsh result dismissal imposes on individual plaintiffs, they have nonetheless concluded that "the state secret doctrine finds the greater public good – ultimately the less harsh remedy – to be dismissal." *Bareford*, 973 F.2d at 1144. "The interest at issue in this case is not simply that of a private party . . . but rather the compelling interest of the United States Government in maintaining, through a privilege protected by constitutional principles of separation of powers [highly sensitive information]." *In re United States*, 872 F.2d 472, 482 (D.C. Cir.), *cert. denied*, 493 U.S. 960 (1989).

## CONCLUSION

For the foregoing reasons and those discussed in both the public and *in camera, ex parte* declarations of the Director, the Court should uphold the Director's assertion of the state secrets privilege and statutory privileges and dismiss Plaintiff's Complaint in its entirety.

Dated:  December 5, 2014                           Respectfully submitted,

                                                   JOYCE R. BRANDA
                                                   Acting Assistant Attorney General

                                                   DANA J. BOENTE
                                                   United States Attorney

                                                   SUSAN K. RUDY
                                                   Assistant Branch Director
                                                   Federal Programs Branch

                                                   CARLOTTA P. WELLS
                                                   Senior Trial Counsel
                                                   TIMOTHY A. JOHNSON
                                                   Trial Attorney
                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   20 Massachusetts Avenue NW
                                                   Washington, D.C. 20530
                                                   Tel: (202) 514-4522
                                                   Fax: (202) 616-8470
                                                   carlotta.wells@usdoj.gov

                                                   */s/*_____
                                                   LAUREN A. WETZLER
                                                   Civil Chief
                                                   R. JOSEPH SHER
                                                   Deputy Civil Chief
                                                   Assistant United States Attorneys
                                                   United States Attorney's Office
                                                   2100 Jamieson Avenue
                                                   Alexandria, VA 22314
                                                   Tel: (703) 299-3752
                                                   Fax: (703) 299-3983
                                                   lauren.wetzler@usdoj.gov

                                                   *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of Court using the

CM/ECF system, which will send a notification of such filing (NEF) to the following:

> DONNA WILLIAMS RUCKER (DC# 446713)
> JEANETT HENRY (DC# 411052)
> RUCKER, BROWN & HENRY, P.C.
> 888 Sixteenth Street, N.W., Suite 800
> Washington, DC 20006-4104
> Office: (202) 349-9830
> Facsimile: (202) 355-1399
> Email: drucker@ruckerlawpc.com, jhenry2085 @aol.com

Dated:  December 5, 2014


                                        /s/_____
                                        LAUREN A. WETZLER
                                        Civil Chief
                                        R. JOSEPH SHER
                                        Deputy Civil Chief
                                        Assistant United States Attorneys
                                        United States Attorney's Office
                                        2100 Jamieson Avenue
                                        Alexandria, VA 22314
                                        Tel: (703) 299-3752
                                        Fax: (703) 299-3983
                                        lauren.wetzler@usdoj.gov

                                        *Counsel for Defendants*