**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| JACOB E. ABILT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:14-cv-01031 (GBL) (IDD) |
| ) | |
| CENTRAL INTELLIGENCE AGENCY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**COMES NOW** the Plaintiff Jacob Abilt, by and through his undersigned counsel, hereby submits his Memorandum of Points and Authorities in Support of his Opposition to Defendants' Motion to Dismiss.

**I.    INTRODUCTORY STATEMENT**

On February 12, 2014, Plaintiff Jacob Abilt ("Mr. Abilt" or "Plaintiff") filed a Complaint against Defendant Central Intelligence Agency and Defendant Director John Brennan (collectively, the "Defendants") alleging the following four Counts: Count I – Disability Discrimination and Failure to Accommodate in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*. ("Rehabilitation Act"), Count II – Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), Count III – Race Discrimination in violation of Title VII, and Count IV – Hostile Work Environment in violation of the Rehabilitation Act and Title VII. Dkt. No. 1. Specifically, Mr. Abilt alleges that he is an African American who suffers from a disability (narcolepsy). At all relevant times during Mr. Abilt's

employment with the Central Intelligence Agency, his disability and race were known by his supervisors. Mr. Abilt further alleges that, at no time, did he function below the performance expectations of his employer, which is supported by his positive performance evaluations since his employment in June 2006, receipt of praise on his performance, and his approval of a Student Repayment Letter. However, beginning on or around June 2010 and through his termination in 2011, Mr. Abilt was subjected to the following discriminatory and harassing employment actions: being regularly harassed for taking naps at his desk by his supervisor,[1] was placed on an Advanced Work Plan ("AWP") without prior notice of perceived deficiencies in his work performance, required to weekly submit progress reports to his supervisor, required to submit progress report every four (4) hours to his supervisor, required to attend weekly meetings to discuss his work, was not provided clear guidelines to improve his alleged deficient performance, was recommended for a Fitness for Duty exam (which determined Mr. Abilt fit for duty), provided an unwarranted "unsuccessful" performance rating in August 2011, had his terminal access terminated, denied the ability to defend his supervisors' performance allegations before a Personnel Evaluation Board, and ultimately had his employment terminated. During the AWP meetings with his supervisors, Mr. Abilt was told to control his narcolepsy and "try not to fall asleep at his desk."

On August 11, 2014, the Court granted the Defendants' request for change of venue from the United States District Court for the District of Columbia to the United States District Court for the Eastern District of Virginia. *See* Minute Order, dated August 11, 2014. Three weeks later, on September 2, 2014, the Court granted the Defendants'

---

[1] Mr. Abilt was authorized to take naps at his desk as a result of an agreement reach with his employer resulting from a previous EEO complaint that he filed. The naps did not interfere with his ability to successfully perform his duties.

request to stay this matter. *See* Order, dated September 2, 2014. Upon the close of the stay, the Defendants filed the instant Motion to Dismiss on December 5, 2014. Dkt. No. 29. With the Court's permission, Plaintiff now submits his Opposition thereto.

## II.     ARGUMENT

In its Motion, the Defendants move to dismiss Plaintiff's Title VII and Rehabilitation Act claims and put forth arguments to explain the potential harm to national security if Mr. Abilt's claims were to be litigated in this Court and invoke the state secrets doctrine. The Defendants' arguments center around Mr. Abilt's *prima facie* evidentiary burden, the Defendants' defense, and a vulnerability of accidental exposure of classified information. The governments' arguments are not persuasive for the following reasons.

First, the Defendants' contention that state secrets might be at risk where non-privileged information is disclosed is without empirical support and there are no cases counsel could find that indicates that Defendants' concerns have come to pass. The Defendants "cannot, merely by invoking national security, exempt themselves from coverage of the nondiscrimination provisions" of Title VII or the Rehabilitation Act. *See* EEOC, Policy Guidance on the Use of the National Security Exception Contained in § 703(g) of Title VII. For almost half a century, all federal employees, including those like Mr. Abilt who are employees of intelligence agencies, have had the right to go to federal court on claims of discrimination and retaliation, with jury trials and seek compensatory damages under statutes like Title VII and the Rehabilitation Act. There does not appear to be any evidence that under the civil rights laws where national security and intelligence agency employees have had full access to federal court that the litigation has

3

led to exposure of evidence that compromises national security. There is no credible evidence to support the assertion offered that exposure would occur in this case. Where national security is related to a case, this Court, like other district courts, have many protective measures available to prevent disclosure of classified information. For example, in civil rights cases, like this one, federal courts use pseudonyms and protective orders to protect national security interests. The rules of civil procedure and rules of evidence have protective procedures, such as in-camera proceedings, and redaction of classified information.

Second, in support of its contention that the evidence needed to either support Mr. Abilt's *prima facie* burden of proof or support the Defendants' defense of the claims, the Defendants rely upon *Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005). However, *Sterling* is factually distinct from the instant case. Unlike *Sterling*, the instant case was litigated at two administrative levels – internal Agency EEO process and before the United States Equal Employment Opportunity Commission ("EEOC"). At the EEO process, a two volume, unclassified redacted Report of Investigation was compiled for the purpose of discovery information and on which investigative activities and findings are rigorously documented. The EEOC is an outside agency and not a counterpart to the CIA. However, as noted by the Defendants, the EEOC used materials provided to it by the Agency to affirm the Agency's EEO decision. Neither of the administrative investigations were terminated for lack of authority to investigate Mr. Abilt's complaints. As such, the administrative history of this case is evidence that the instant matter can be litigated without the exposure of classified information.

4

Third, Mr. Abilt would be able to prove his employment discrimination claims without exposing classified information. Defendant is incorrect that specific classified information like a CIA employee's identity, Mr. Abilt's or other coworkers work assignments or information related to specific assignments, sources like the identity of human assets used by covert employees, methods used by covert employees, targets of CIA operations, focus of CIA intelligence collection, or the location of covert CIA facilities is needed by Mr. Abilt to prove his claims. In fact, this information is largely irrelevant to instant case. Where any identifying information of a covert employee is needed, pseudonyms or code names, which the employees are trained to used, can be used as was done at the administrative level. Revelation of coded information tells citizens nothing about what the government is up to and thus there is little interest in the disclosure of that information. The following evidence is sufficient to meet each of Mr. Abilt's burdens of discrimination and harassment: the repeated negative statements made by Mr. Abilt's supervisors regarding his disability, the history of his exceptional performance (which can be redacted to only show his rating), providing him with benefits only provided to those successfully performing their duties during the time of his alleged deficient performance, and providing him with positive feedback during the time period of this alleged deficient performance. Additionally, the short time period between when Mr. Abilt filed his EEO complaints to the date when he experienced a retaliatory employment action of being required to take a Fitness for Duty Exam, provided a negative performance evaluation, notice of termination and effective termination all occur well within the temporal proximity used to show causal connection. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (finding that termination within

three months was sufficient to prove causality); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) (concluding "[n]ormally, very little evidence of a causal connection is required to establish a *prima facie* case").

In further regard to the Defendants' *prima facie* argument, if the Defendants proffer what it believes to be a legitimate, nondiscriminatory reason to explain the disparate treatment, then the Court must determine, without addressing whether a *prima facie* case was met, the ultimate question of whether a reasonable juror could find that Mr. Abilt was subjected to discrimination. *Reeves* v. *Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (when the employer makes a legitimate reason for the adverse actions taken, the presumption of discrimination drops out); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981) (when the employer makes a legitimate reason for the disparate treatment the "sole remaining issue [is] discrimination *vel non*."). The same evidence Mr. Abilt could use to establish a *prima facie* case could also be used to establish that the Agency's proffered reason was actually pretext for its adverse employment actions against Mr. Abilt. *Murrell v. Ocean Mecca Motel, Inc.,* 262 F.3d 253, 258-59 (4th Cir. 2001) ("the plaintiff need not submit additional evidence of discrimination [beyond *prima facie* evidence] unless no rational factfinder could conclude that the action was discriminatory").

Additionally, the Defendants would not need to expose classified information when defending its case. In apposite of *Sterling*, the instant Defendants do not need to divulge any classified information related either Mr. Abilt's performance/duties or that of his similarly situated coworkers. Mr. Abilt's and his coworkers' respective positions, and thus performance standards, are determined by the position's Knowledge, Skills and

Abilities ("KSA") and performance results are measured by the Performance and Accountability Report ("PAR"). The KSA's/PAR's provide the critical elements of a position that do not reveal specific information of an employees' assignment duties and, even assuming any classified information is contained in the PAR, it may be redacted. By using these unclassified KSA's/PAR's and redacting any classified information related to an employee's performance, the Defendant is able to defend its assertion that Mr. Abilt was not performing to the Agency's standards, which resulted in Mr. Abilt's perceived `low performance evaluation and termination.

Because these protective measures can be used in this case and non-classified information can be used by either party to support their respective positions, there is not a reasonable danger of state secrets being exposed. *See United States v. Reynolds*, 345 U.S. 1, 10 (1953). Thus, Defendant's Motion should be denied.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein and in the interest of justice, Mr. Abilt respectfully requests that this Honorable Court deny the Defendants' Motion to Dismiss and grant

such other and further relief as deemed just and proper.  Mr. Abilt also requests a hearing on this matter.

                        Respectfully submitted,

By:    //s// *Frazer Walton, Jr.*_____
FRAZER WALTON, JR.
  (V.A. Bar No.: 30959)
LAW OFFICES OF FRAZER WALTON, JR.
1913 D Street, N.E.
Washington, DC 20002
Office: (202) 398-8920
Email: frawalton@verizon.net

DONNA WILLIAMS RUCKER
RUCKER & ASSOCIATES, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006-4104
Office: (202) 349-9830
Facsimile: (202) 355-1399
Email: drucker@ruckerlawpc.com

December 24, 2014                Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss and Memorandum of Points and Authorities were sent on this 24th day of December 2014 via the Court's electronic mailing system ("CM/ECF") to all counsel for the Defendant as follows:

> Lauren A. Wetzler, Civil Chief
> R. Joseph Sher, Deputy Civil Chief
> U.S. Attorney's Office for the Eastern District of Virginia
> 2100 Jamieson Avenue
> Alexandria, VA 22314

> _//s// *Frazer Walton, Jr.*_____
> FRAZER WALTON, JR.