IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

JACOB E. ABILT,                          )
                                         )
    Plaintiff,                          )
                                         )
    v.                                  )        Case No. 1:14-cv-01031-GBL-IDD
                                         )
CENTRAL INTELLIGENCE                     )
AGENCY, et al,,                          )
                                         )
    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Central Intelligence Agency and John O.

Brennan's ("Defendants") Motion to Dismiss (Doc. 28).  This is an employment discrimination

action where Plaintiff Jacob E. Abilt[1] ("Plaintiff") alleges that his former employer, the Central

Intelligence Agency ("CIA"), discriminated against him on the basis of his disability and his

race, subjected him to a hostile work environment, and retaliated against him for complaining of

discrimination.  Plaintiff alleges that his supervisors at the CIA falsely reported that he was

failing to satisfactorily perform his work assignments and later terminated him based on

discriminatory motives.  Defendants have formally asserted the state secrets privilege claiming

that further litigation of Plaintiff's claims would require the disclosure of privileged information.

Defendants maintain that dismissal is the appropriate remedy as privileged information is

essential to the litigation of Plaintiff's claims. The issues before the Court are (1) whether

Defendants have properly invoked the state secrets privilege, and (2) whether this action can

proceed without risking disclosure of privileged information.

---

[1] Due to the sensitive nature of Plaintiff's job duties, Plaintiff has filed this Complaint under the
pseudonym of Jacob E. Abilt (Doc. 1).

The Court holds that Defendants have properly invoked the states secret privilege. After careful consideration of the public and classified pleadings, the Court holds that Plaintiff's claims must be dismissed under the state secrets privilege because (1) privileged information is at the heart of Plaintiff's claims for discrimination on the basis of disability and race, hostile work environment and retaliation, (2) Defendants cannot defend this action without relying on privileged information, and (3) further litigation of Plaintiff's claims would present an unjustifiable risk of disclosure of classified information regarding (a) the identities of CIA officers and employees, (b) the job titles, duties, work assignments of Plaintiff and other covert employees, and the criteria and reasons for making the work assignments and employment decisions regarding them, (c) sources and methods used by covert employees, including operational tradecraft and the identity of human assets; (d) the targets and focus of CIA's intelligence collection and operations, and (e) the location of CIA covert facilities. Accordingly, the Court grants Defendant's motion.

## BACKGROUND

Plaintiff Jacob Abilt, an African-American male, was employed in the CIA's National Clandestine Service[2] as an Applications Director and Technical Operations Officer from May 2008 until his termination in October 2011 (Docs. 1; 29-1). Plaintiff asserts that at or around the time he was hired, he informed his supervisors of his medically diagnosed condition, narcolepsy (Doc. 1). In 2009, Plaintiff began to experience symptoms of his disability in the workplace. *Id.* His supervisors agreed to grant Plaintiff an accommodation of his disability and allow him to take brief naps at his desk provided that Plaintiff account for the missing time by working through a lunch break or working beyond his scheduled tour of duty. *Id.* Despite this

[2] According to Defendant Brennan, the National Clandestine Service is the organization within the CIA responsible for conducting CIA's foreign intelligence and counter intelligence activities (Docs. 29; 29-1).

accommodation, Plaintiff claims his supervisors would harass him whenever they witnessed him taking naps at his desk. *Id.*

In February 2011, Plaintiff's supervisors placed him on an Advanced Work Plan requiring Plaintiff to submit weekly progress reports and attend weekly meetings to discuss his work performance, despite Plaintiff having consistently received positive performance evaluations, praise on his work ethic and approval of his Student Repayment Letter (Doc. 1). Plaintiff claims that none of his similarly situated colleagues were required to submit weekly reports and attend weekly meetings with supervisors. *Id.* Plaintiff alleges that his supervisors used the weekly meetings as a forum to harass him about his disability and to falsely accuse his work performance as falling below standards. *Id.*

In March and April 2011, Plaintiff worked on a project overseas in which he received accolades for "demonstrating skills that will enable greater efficiency in several operations" (Doc. 1). Despite this praise, Plaintiff was required to resume his weekly reporting and meetings once he returned from his overseas assignment. *Id.* In May 2011, Plaintiff's supervisors recommended that Plaintiff undergo a Fitness for Duty Evaluation to be conducted by the Office of Medical Services. *Id.* Plaintiff submitted to the evaluation and was rendered fit to perform his duties with the agreed upon accommodations. *Id.* Plaintiff claims that between February and July 2011, Plaintiff was subjected to a continuous pattern of harassment calculated to lead to his termination. The harassment included the submission of weekly reports, attendance at weekly meetings with supervisors, false accusations of poor work performance, harassment about his disability and accommodations, confronting Plaintiff with complaints solicited from co-workers and communicating with Plaintiff in a demeaning manner. *Id.* Consequently, Plaintiff filed a formal administrative complaint with the CIA alleging that his supervisors at the CIA

discriminated against him on the basis of his disability and race, subjected him to a hostile work environment, and retaliated against him for having engaged in previous Equal Employment Opportunity activity (Doc. 1). The CIA issued a final decision rejecting Plaintiff's claims, and Plaintiff ultimately appealed the decision to the Equal Employment Opportunity Commission ("EEOC") (Doc. 29). The EEOC affirmed the CIA's final decision and denied Plaintiff's request for reconsideration. *Id.* Plaintiff was ultimately terminated from his position in a decision by the Personnel Evaluation Board in October 2011 (Doc. 1).

Plaintiff now brings this suit against Defendants Brennan and the CIA alleging the following: (1) disability discrimination and failure to accommodate in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* ("Rehabilitation Act") (Count One); retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII) (Count Two); race discrimination in violation of Title VII (Count Three); and hostile work environment in violation of the Rehabilitation Act and Title VII (Count Four) (Doc. 1).

This matter is now before the Court on Defendant's Motion to Dismiss. Defendants have invoked the state secrets privilege claiming that privileged information regarding (a) the identities of CIA officers and employees, (b) the job titles, duties, work assignments of Plaintiff and other covert employees, and the criteria and reasons for making the work assignments and employment decisions regarding them, (c) sources and methods used by covert employees, including operational tradecraft and the identity of human assets, (d) the targets and focus of CIA's intelligence collection and operations, and (e) the location of CIA covert facilities is at the core of Plaintiff's discrimination claims (Doc. 29). Defendants maintain that Plaintiff cannot

establish his claims, and Defendants cannot defend this action without relying on privileged state secrets information. *Id.* Therefore, Defendants argue, Plaintiff's action must be dismissed. *Id.*

Plaintiff acknowledges that classified information is relevant to his claims. Plaintiff, however, maintains that the Court can reach an informed decision about whether he was terminated because of discriminatory bias, or instead, because of his alleged poor performance without considering classified information related to Plaintiff's job duties, work performance and assignments (Doc. 45). Instead, Plaintiff suggests that the Court can use pseudonyms and protective orders to protect national security interests, and other accommodations to protect national security interests. *Id.*

## STANDARD OF REVIEW

While it is not expressly stated in their motion, Defendants presumably move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants, however, attached a public Declaration and Formal Claim of State Secrets Privilege and Statutory Privileges by Defendant Brennan (Doc. 29-1) to their motion, and submitted a classified *in camera, ex parte* declaration for the Court's consideration. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed.R.Civ.P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir.1997). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir.2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir.1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d

253, 261 (4th Cir.1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

Here, the parties had adequate notice that Defendants' motion would be treated as a motion for summary judgment as evidenced by the Court's February 2, 2015 Order (Doc. 48). The Court recognizes the dangers in allowing discovery to proceed in this action where Defendants contend that the very core of Plaintiff's claims implicate classified information. Therefore, the Court declined to allow any discovery in this action.

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. 242-48. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JFK Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment." *Anderson,* 477 U.S. at 248; *Hooven-Lewis v. Caldera,* 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson,* 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

## ANALYSIS

### I. The State Secrets Privilege

The Court holds that there is no genuine issue of material fact that Defendants have properly invoked the states secret privilege, and that the privileged information is at the heart of Plaintiff's claims for discrimination on the basis of disability and race, hostile work environment and retaliation. After careful consideration of the public and classified pleadings, the Court holds that Plaintiff's claims must be dismissed under the state secrets privilege. Plaintiff cannot establish his Title VII and Rehabilitation Act claims, nor can Defendant defend this action without reliance on evidence that is protected by the state secrets privilege. Additionally, further litigation of Plaintiff's claims would present an unjustifiable risk of disclosure of classified information regarding specific CIA programs or activities on which Plaintiff worked and information concerning the CIA's employment of Plaintiff, his colleagues, and his supervisors. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

Created by federal common law, the state secrets doctrine bars litigation of an action entirely or excludes certain evidence because the case or evidence risks disclosure of "state secrets"—that is, "matters which, in the interest of national security, should not be divulged."

*United States v. Reynolds*, 345 U.S. 1, 10 (1953). Although developed at common law, the state secrets doctrine also "performs a function of constitutional significance, because it allows the executive branch to protect information whose secrecy is necessary to its military and foreign-affairs responsibilities." *El–Masri v. United States*, 479 F.3d 296, 303 (4th Cir.2007). At the same time, the state secrets doctrine does not represent an abdication of judicial control over access to the courts, as the judiciary is ultimately tasked with deciding whether the doctrine properly applies to a particular case. *Id.* at 312. The state secrets doctrine thus attempts to strike a difficult balance between the Executive's duty to protect national security information and the judiciary's obligation to preserve judicial transparency in its search for the truth. *Id.* at 303–305.

An analysis of claims under the state secrets privilege involves three steps. First, the court must ascertain whether the procedural requirements for invoking the privilege, consisting of a formal claim by the government, have been satisfied. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1080 (9th Cir. 2010). Second, the court must independently determine whether the information is privileged. *Id.* Third, the court must determine how the case should proceed in light of the successful privilege claim. *Id.* Once the privilege is properly invoked, and the court is satisfied as to the danger of disclosing state secrets, the privilege is absolute. *See Reynolds*, 345 U.S. at 11, ("[E]ven the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that [state] secrets are at stake."); *In re United States*, 872 F.2d 472, 476 (D.C.Cir.1989) ("No competing public or private interest can be advanced to compel disclosure [of privileged information]." (citation and quotes omitted)). This is because, in determining whether the privilege applies to a particular case, "the balance has already been struck in favor of protecting secrets of state over the interest of a particular litigant." *In re United States*, 872 F.2d at 476 (citation and quotes omitted). The Supreme Court has therefore cautioned

that the privilege "is not to be lightly invoked," and must be applied no more often or extensively than necessary. *Reynolds*, 345 U.S. at 7–8.

### A. Procedural Requirements for Invoking the States Secret Privilege

The Court finds that Defendants have properly complied with the procedural requirements for the assertion of the state secrets privilege. The state secrets privilege may only be asserted by the government, and a private party can neither claim nor waive the privilege. *Reynolds*, 345 U.S. at 7. The procedural requirements for invoking the state secrets privilege are threefold: (1) there must be a "formal claim of privilege;" (2) the claim must be "lodged by the head of the department which has control over the matter;" and (3) the claims must be made "after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7–8, *El-Masri*, 479 F.3d at 304.

There is no dispute that Defendants have properly invoked the state secrets privilege. Defendants have made a formal assertion of the state secrets privilege by submitting a public declaration by Defendant Brennan in his capacity as the Director of the CIA (Doc. 29-1). Defendant Brennan asserted the state secrets privilege after personal consideration of Plaintiff's claims and determined that the disclosure of information relating to "intelligence sources, methods, and activities that may be implicated in the plaintiff's complaint or are otherwise at risk of disclosure in this case." *Id.* Additionally, Defendant Brennan's classified declaration describes in great detail the information subject to the state secrets privilege and explains how disclosure of that information could reasonably result in damage to the national security of the United States of America. Lastly, Defendants assert that the Attorney General has reviewed and approved of the assertion of the state secrets privilege pursuant to the procedures established by the Department of Justice to ensure a thorough consideration of the assertion of the privilege.

*See* Doc. 29. Accordingly, the Court holds that Defendants have satisfied the procedural requirements for invoking the state secrets privilege.

### B. Evaluation of the Privilege Claim

After a thorough review of the public and classified declarations filed by Defendant Brennan in support of the invocation of the state secrets privilege, the Court holds that the information Defendants seek to protect is, in fact, protected from disclosure by the state secrets privilege, for this information, if revealed, may pose a substantial risk to the security of the United States.

"After a court has confirmed that the *Reynolds* procedural requirements are satisfied, it must determine whether the information that the United States seeks to shield is a state secret, and thus privileged from disclosure." *El-Masri*, 479 F.3d at 304. The court must "sustain a claim of privilege when it is satisfied, 'from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose ... matters which, in the interest of national security, should not be divulged.'" *Jeppesen Dataplan, Inc.*, 614 F.3d at 1081 (quoting *Reynolds*, 345 U.S. at 10). "This inquiry is a difficult one, for it pits the judiciary's search for truth against the Executive's duty to maintain the nation's security." *El-Masri*, 479 F.3d at 304. "The Executive bears the burden of satisfying a reviewing court that the *Reynolds* reasonable-danger standard is met." *Id.* at 305.

Defendants assert the state secrets privilege over the following categories of information: (a) the identities of CIA officers and employees; (b) the job titles, duties, work assignments of Plaintiff and other covert employees, and the criteria and reasons for making the work assignments and employment decisions regarding them; (c) sources and methods used by covert employees, including operational tradecraft and the identity of human assets; (d) the targets and

focus of CIA's intelligence collection and operations; and (e) the location of CIA covert facilities.

Defendants maintain that the disclosure of the identities of current covert employees would compromise the ability of such employees to continue to serve in a clandestine role, at the very least requiring the CIA to find, vet, and train new employees to fill such roles (Docs. 29; 29-1). Defendants contend that the exposure of CIA methods and targets give those targets the ability to frustrate CIA's intelligence gathering methods and thus diminishes the CIA's effectiveness. *Id.* Furthermore, Defendants argue that disclosure of the location of CIA covert facilities would have a number of ramifications, including (1) it could increase the likelihood of a terrorist attack at the covert facility, and (2) official acknowledgment of overseas facilities could cause the foreign government to publicly distance itself from the United States Government or take other measures to reduce the effectiveness of a CIA office. *Id.* These categories of information are indisputably covered by the state secrets privilege. *See Sterling v. Tenet*, 416 F.3d 338, 346 ("information that would result in . . . 'disclosure of intelligence gathering methods or capabilities, and disruption of diplomatic relations with foreign governments' falls squarely within the definition of state secrets.") (quoting *Molerio v. FBI*, 749 F.2d 815, 820-21 (D.C. Cir. 1984)); *Jeppesen Dataplan, Inc.*, 614 F.3d at 1086 (holding that "information concerning CIA clandestine intelligence operations that would tend to reveal intelligence activities, sources or methods" is protected by state secrets privilege; *Al-Haramain Islamic Found. v. Bush*, 507 F.2d 1190, 1204 (9th Cir. 2007) (applying the state secrets privilege to "the means, sources and methods of intelligence gathering"); *Blazy v. Tenet*, 979 F.Supp. 10, 23-4 (D.D.C. 1997) (CIA properly withheld the location of covert facilities in a FOIA case); *Earth Pledge Found. v. CIA*, 988 F.Supp. 623, 627-8 (S.D.N.Y. 1996), *aff'd per curiam*, 128 F.3d 788

(2d Cir. 1997) (CIA properly refused to confirm or deny the existence of an overseas CIA station).

Based upon a review of the public and classified declarations, the Court finds that the disclosure of (a) the identities of CIA officers and employees, (b) the job titles, duties, work assignments of Plaintiff and other covert employees, and the criteria and reasons for making the work assignments and employment decisions regarding them, (c) sources and methods used by covert employees, including operational tradecraft and the identity of human assets; (d) the targets and focus of CIA's intelligence collection and operations, and (e) the location of CIA covert facilities is protected by the state secrets privilege, as the disclosure of this information could reasonably be expected to cause significant harm to national security. Thus, information related to the aforementioned categories shall be protected from disclosure. *See El-Masri*, 479 F.3d at 306 ("a court's determination that a piece of evidence is a privileged state secret removes it from the proceedings entirely.") (citing *Reynolds*, 345 U.S. at 11).

## C. How the Case Should Proceed

The Court holds that dismissal of this action is appropriate because Plaintiff cannot establish his claims, nor can Defendant defend this action without the presentation of privileged information, and further litigation of Plaintiff's claims would present an unjustifiable risk of disclosure of classified information.

If a court sustains a claim of privilege, "the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim." *El-Masri*, 479 F.3d at 304. "If a proceeding involving state secrets can be fairly litigated without resort to privileged information, it may continue. But if "'the circumstances make clear that sensitive military secrets will be so central to the subject matter of litigation that any attempt to proceed will

threaten the disclosure of the privileged matters,' dismissal is the proper remedy. *Id.* at 306 (quoting *Sterling*, 416 F.3d at 348). Courts have found three circumstances in which a case implicating privileged state secrets should be dismissed: (1) if the privilege deprives the plaintiff of evidence necessary to prove his claims; (2) if the privilege deprives the defendant of evidence that would support a valid defense; and (3) if litigating the claim to judgment on the merits would present an unacceptable risk of revealing state secrets, even if the claims and defenses might theoretically be established without the privileged evidence. *See Sterling*, 416 F.3d at 348; *El-Masri*, 479 F.2d at 308-10; *Trulock v. Lee*, 66 Fed. App'x 472, 476 (4th Cir. 2003); *Jeppesen Dataplan, Inc.*, 614 F.3d at 1083.

As described fully below, this action falls into all three categories.

### 1. Privileged Information is at the Core of Plaintiff's Case

As described below, state secrets are critical to the resolution of Plaintiff's discrimination and hostile work environment claims.

A plaintiff may establish a claim for discrimination in one of two ways. First, she may do so by demonstrating through direct or circumstantial evidence that discrimination against her because of her protected characteristic motivated the defendant's adverse employment action. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). Second, a plaintiff may proceed under the *McDonnell Douglas* burden-shifting framework, whereby the plaintiff, after establishing a prima facie case of discrimination, "demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* at 285 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

The *McDonnell Douglas* burden-shifting framework has been used to evaluate discrimination and retaliation claims under both Title VII and the Rehabilitation Act. *See Ennis v. National Ass'n of Business & Educ. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir.1995). First, the plaintiff must prove by a preponderance of the evidence a prima facie case. *Burdine*, 450 U.S. at 252-53. Establishing a prima facie case "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 254.

Second, if the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the decision to terminate the plaintiff. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 802); *Lockheed*, 354 F.3d 277, 298 (4th Cir. 2004). The defendant's burden is one of production, not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). It can involve no credibility assessment, that is, the defendant does not need to persuade the court that it was actually motivated by the proffered reasons as long as those reasons, if believed by the jury, would be legally sufficient to justify a judgment for the defendant. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If the defendant meets its burden of production, the presumption raised by the prima facie case is rebutted. *Burdine*, 450 U.S. at 255.

Third, if the defendant satisfies its burden of production, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 804). This burden merges with the plaintiff's ultimate burden of persuading the court that she was a victim of intentional discrimination. *Id.* at 256.

###### a.    Disability Discrimination and Failure to Accommodate (Count One)

In order to establish a violation of the Rehabilitation Act for disparate treatment, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination on the basis of the disability.  *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-5 (4th Cir. 1995).  Plaintiff would have to establish that he was "qualified" for his covert position such that he could "perform the essential functions of the . . . position."  42 U.S.C. §§ 12111(8), 12112(a).

Plaintiff alleges that despite the fact that he was qualified to perform his covert position as a Technical Operations Officer, the CIA failed to reasonably accommodate his disability, narcolepsy (Doc. 1).  Plaintiff maintains that the CIA, by failing to comply with the agreed upon accommodation for his disability, and for criticizing him when he did take naps as his desk pursuant to his accommodation, unreasonably interfered with his ability to perform his job duties.  *Id.*  As Defendants correctly point out, among the factors used to determine the essential functions of the covert position at issue would be the CIA's judgment as to which functions are essential, the work experience of past employees in the position, the current work experience of current employees in the position.  To show that Plaintiff was excluded from employment because of his disability, Plaintiff would likely introduce evidence as to the performance standards for Plaintiff's position, Plaintiff's performance evaluations and any information that may rebut his supervisor's assessment of Plaintiff's alleged poor work performance.  This information, as the Court has noted above, it protected from disclosure by the state secrets privilege.

### b.    Retaliation (Count Two)

In order to succeed on a claim of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal nexus between the protected activity and the adverse action. *Laing v. Fed Express Corp.*, 703 F.3d 713 (4th Cir. 2012).

Plaintiff claims that the CIA retaliated against him because of his prior EEO activity (Doc. 1). Specifically, Plaintiff claims that he was subjected to criticism for taking naps at his desk, he was required to submit weekly reports and attend weekly meetings with his supervisors to discuss his work performance, required to submit to a Fitness for duty evaluation, given poor performance ratings on his performance evaluations, addressed in a demeaning manner and ultimately terminated from his position because his supervisors were aware of his prior discrimination claims. *Id.* In order to establish a claim for retaliation, Plaintiff would need to establish a causal connection between the adverse employment actions and his protected activity, which would require a consideration of the essential functions of Plaintiff's covert position, performance standards for his position, his performance evaluations, and any evidence that would tend to rebut his supervisors' assessment of his work performance. This information, along with the identities of Plaintiff's former supervisors and colleagues, is protected by the state secrets privilege.

### c.    Racial Discrimination (Count Three)

In order to establish a claim of disparate treatment, a plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment

action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir.2010).

Plaintiff alleges that, as an African-American, he was subjected to different terms and conditions of his employment than similarly situated coworkers (Doc. 1). Plaintiff alleges that he was deprived of opportunities for advancement because of his race. *Id.* In order to demonstrate that Plaintiff was treated differently than similarly situated coworkers, Plaintiff would surely seek to introduce evidence that he was performing his job duties satisfactorily and that he received positive performance evaluations and praise for his performance. Additionally, Plaintiff would likely introduce evidence that other similarly situated coworkers were not placed on a performance plan or subjected to weekly progress meetings with their supervisors. This evidence would necessarily implicate the identity, job titles and duties of his coworkers, the details of the assignments given to Plaintiff and his coworkers and how those assignments were evaluated in performance evaluations, and the training and experience required for different assignments. As noted above, the Court has determined that this information is protected from disclosure by the state secrets privilege.

### d.    Hostile Work Environment (Count Four)

A Title VII harassment claim under the "hostile work environment" theory is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 324, 333 (4th Cir. 2003). First, the plaintiff must show that he "subjectively perceive[d] the environment to be

abusive." *Harris*, 510 U.S. at 21 –22. Next, the plaintiff must show that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Serv.'s, Inc.*, 523 U.S. 75, 81 –82 (1998).

Plaintiff alleges that as a result of his protected status and engagement in prior protected activity he was subjected to a hostile work environment when his supervisors routinely harassed and humiliated him by requiring him to submit weekly reports, attend weekly meetings with supervisors, falsely accused him of poor work performance, harassed him about his disability and accommodations, confronted him with complaints solicited from co-workers and communicated with Plaintiff in a demeaning manner (Doc. 1). In order to establish his claims, Plaintiff would need to demonstrate that the reasons he faced a hostile work environment were because of his race, disability or protected status rather than poor work performance. Such evidence would implicate the identity, duties and responsibilities of his colleagues' positions, as well as his own, performance standards for that position, the substance of Plaintiff's prior performance evaluations, and any evidence Plaintiff may seek to introduce to rebut his supervisors' evaluations of his work performance. Again, the details of Plaintiff's work performance, his supervisors' evaluations of Plaintiff's work performance, and the identity of his supervisors and colleagues are protected by the state secrets privilege.

## 2. Privileged Information is Necessary for the Defense of this Action

In the event that Plaintiff could establish claims for discrimination on the basis of disability and race, hostile work environment and retaliation without reference to privileged information, Defendants, undoubtedly, would need to rely on privileged information to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's position. Plaintiff's claims in this action focus on his work performance as a covert operations officer for the CIA, his

supervisor's constant criticism of his work performance and manufactured negative reviews, and ultimately his termination. As Defendants correctly point out, in order to explain the basis for its decisions regarding Plaintiff's employment, the CIA would be required to disclose privileged information regarding the work assignments of Plaintiff and his colleagues, as well as details regarding their job performance and the criteria used by the CIA to evaluate their performance and make assignments. Not only is this information protected from disclosure by the state secrets privilege, disclosure of this information may possibly reveal other privileged information such as intelligence gathering techniques which could endanger ongoing intelligence operations and operatives in the field.

**3. Further Litigation of this Case Would Impose an Unjustifiable Risk of Disclosing State Secrets**

Dismissal of this action is required because, even if Plaintiff's claims or the defense thereto may theoretically be established without relying on privileged information, the Court is convinced that further litigation of Plaintiff's claims would impose an unjustifiable risk of disclosing state secrets.

In *Sterling v. Tenet*, 416 F.3d 338 (4th Cir. 2005), a case that is strikingly similar to the present action, the Fourth Circuit Court of Appeals affirmed this Court's dismissal of a Title VII action initiated by an African-American former CIA agent alleging race discrimination, disparate treatment and retaliation against the CIA. In the underlying action, Mr. Tenet, the then-Director of the CIA invoked the state secrets privilege arguing that further litigation of Mr. Sterling's claims would reveal CIA intelligence sources and intelligence gathering techniques that would endanger ongoing operations and operatives in the field. *Sterling v. Tenet*, Case No. 1:03-cv-00329, Doc. 52, (E.D.Va. Mar. 3, 2004). To further support his invocation of the state secrets privilege, Mr. Tenet submitted both public and classified documents explaining that given Mr.

Sterling's role as a CIA officer, information regarding the very nature of his employment, the location of his employment, and the identity of his supervisors and colleagues is classified. *Id.* After a thorough evaluation of the public and classified declarations submitted by Mr. Tenet, this Court concluded that any information related to the nature and location of Mr. Sterling's employment, as well at the employment of his supervisors and colleagues was protected by the state secrets privilege. *Id.* In dismissing the action, this Court ultimately determined that state secrets were critical to the resolution of Mr. Sterling's discrimination claims, and that any special accommodations to litigate the action without reference to classified documents would risk inadvertent disclosure of classified information. *Id.*

The Fourth Circuit Court of Appeal's ruling in *Sterling* directly refutes Plaintiff's argument that, even if the claim of state secrets privilege is sustained, "protective measures" should be adopted to allow the case to proceed. *Sterling*, 416 F.3d at 348. As the *Sterling* Court explained:

> Inadvertent disclosure during the course of a trial - or even in camera - is precisely the sort of risk that *Reynolds* attempts to avoid. At best, special accommodations give rise to added opportunity for leaked information. At worst, that information would become public, placing covert agents and intelligence sources alike at grave personal risk.

416 F.3d at 348.

As in *Sterling*, this Court finds that the very subject matter of this action is a state secret. Litigation surrounding (a) the identities of CIA officers and employees, (b) the job titles, duties, work assignments of Plaintiff and other covert employees, and the criteria and reasons for making the work assignments and employment decisions regarding them, (c) sources and methods used by covert employees, including operational tradecraft and the identity of human assets; (d) the targets and focus of CIA's intelligence collection and operations, and (e) the

location of CIA covert facilities are protected by the state secret privilege. As the Court explained above, Plaintiff cannot establish his Title VII and Rehabilitation Act claims, nor can Defendants defend this action without presenting evidence that the Court has determined are state secrets. Accordingly, this action must be dismissed. See *Sterling*, *supra*, at 248; *see also El-Masri*, 479 F.3d at 313 (dismissing claims of unlawful detention and interrogation because "privileged state secrets are sufficiently central to the matter"); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1244 (4th Cir. 1985) (affirming dismissal of suit "only when no amount of effort and care on the part of the court and the parties will safeguard privileged material is dismissal [on state secrets grounds] warranted."); *Edmonds v. Department of Justice*, 323 F. Supp. 2d 65, 81-82 (D.D.C. 2004) (dismissing FBI employee's First Amendment and other claims based upon the state secrets privilege).

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment (Doc. 28). There is no genuine issue of material fact that Defendants have properly invoked the states secret privilege. After careful consideration of the public and classified pleadings, the Court holds that Plaintiff's claims must be dismissed under the state secrets privilege because (1) privileged information is at the heart of Plaintiff's claims for discrimination on the basis of disability and race, hostile work environment and retaliation, (2) Defendants cannot defend this action without relying on privileged information, and (3) further litigation of Plaintiff's claims would present an unjustifiable risk of disclosure of classified information regarding (a) the identities of CIA officers and employees, (b) the job titles, duties, work assignments of Plaintiff and other covert employees, and the criteria and reasons for making the work assignments and employment decisions regarding them, (c) sources and methods used by covert employees, including

operational tradecraft and the identity of human assets; (d) the targets and focus of CIA's intelligence collection and operations, and (e) the location of CIA covert facilities. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 28) is **GRANTED**, and this action is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

ENTERED this /01 day of February, 2015.

Alexandria, Virginia
2/10 / 2015

/s/
Gerald Bruce Lee
United States District Judge